E-FILED
Monday, 17 August, 2026 11:29:33 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURTS**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| **ROBERT BUCHANAN, Jr.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-4145-SEM-DJQ** |
| | ) | |
| **WARDEN BAKER, et al.,** | ) | |
| **Defendants.** | ) | |

**ORDER**

**SUE E. MYERSCOUGH, United States District Judge:**

Plaintiff Robert Buchanan, Jr., proceeding *pro se* and currently in custody at Hill Correctional Center, filed a Complaint (#1) on June 2, 2026. Plaintiff alleges therein that he is receiving inadequate medical care at Hill. Plaintiff names as Defendants: Warden Baker, Healthcare Unit Administrator Nellie Boone, Nurse Practitioner Shinn, Nurse Practitioner Kramer, Wexford Health Sources, Inc. ("Wexford"), IDOC Director Hughes, Governor J.B. Pritzker, Warden Bailey, Medical Provider Centurion, and John/Jane Does.

The Court granted Plaintiff leave to proceed *in forma pauperis*, and the case is now before the Court for a merit review of his claims.

**BACKGROUND**

In the first half of his Complaint, Plaintiff alleges that Wexford and Centurion, private corporations that have contracted to provide healthcare services to IDOC inmates, have a policy of deliberately understaffing the prisons. He maintains that this policy results in inmates across the IDOC being deprived of adequate healthcare. Moreover, Plaintiff alleges that former Hill Warden Baker, IDOC Director Hughes, and Governor Pritzker are well aware of the medical understaffing in the prisons due to the class action lawsuits that have been brought in the past but have done nothing to remedy the issue.

Plaintiff next alleges that he fell and injured himself on August 15, 2025, after slipping on spilled water. He alleges that he and two other inmates informed maintenance supervisor Kunutea and correctional officers Scandlin, Kane, and Johnson about the water on the floor. Plaintiff suggests that those four individuals should

not have allowed the prisoners out of their cells and should instead have seen to it that the water was mopped up.

Plaintiff then makes a number of allegations concerning specific health issues. First, Plaintiff alleges that he has a heart condition and that a device has been placed in his chest to monitor his heart. The device is monitored by cardiac specialists at UIC Hospital. On one occasion—some time around September 6, 2025—he experienced chest pain and was supposed to be seen by the UIC Hospital cardiologist. However, Plaintiff was never called to go to the hospital.

Plaintiff also suffers from prostate issues that required him to have surgery. After the surgery, he was told that he would be monitored to be sure his condition did not worsen. Some time again around September 6, 2025, Plaintiff began to experience excruciating pain in his groin area. He made a request to go to the healthcare unit but never heard back. He maintains that this was a deliberate denial of adequate medical care.

Finally, Plaintiff alleges that he has been prescribed Gabapentin for chronic pain in his knees. He asserts that the

medication has been ineffective because Nurse Practitioners Shinn and Kramer have forced him to take it via the crush and float" method. Under this method, the capsule is opened up and the contents dumped into a cup of water, to be drunk by the patient. That method is employed, Plaintiff notes, because some inmates have been caught hoarding pills.

Plaintiff maintains that the crush and float method renders the medication "useless." Plaintiff told Shinn and Kramer that the Gabapentin, delivered in this manner, was not alleviating his pain, yet they persisted in their course of treatment. Plaintiff filed grievances on the matter on September 5 and 6, 2025. He alleges that the IDOC and Hughes have "turned a blind eye" to the medical staff using the crush and float method.

In the final portion of his Complaint, Plaintiff complains that Shinn and Kramer are mere nurse practitioners, rather than specialists, and are therefore insufficient to meet his many medical needs. Plaintiff insists that he needs to be seen by "a specialist who is an expert in a specified field of study of medicine." Wexford, Centurion, and the IDOC are unable to provide this, Plaintiff

alleges, as proven by the fact that he was previously sent to UIC Hospital.

**Analysis**

Request for Counsel

Plaintiff has filed a Motion to Request Counsel (#5). In deciding whether to recruit counsel for a *pro se* litigant, the Court must determine: (1) whether the indigent plaintiff has made a reasonable attempt to obtain counsel on his own; and (2) "given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).

Plaintiff has attached to his Motion seven undated letters requesting representation, each identical except for being addressed to different law firms. He does not attach any replies, nor does he otherwise state in the Motion that he has received any replies. The Court finds that Plaintiff has not demonstrated a reasonable attempt to obtain counsel on his own.

As for the second inquiry, Plaintiff states in his Motion that he has attained his GED. He does not indicate that he has any difficulty reading or writing. Indeed, his claims are neatly and

cogently presented in his Complaint. Moreover, at least at this early stage in the proceeding, the Court does not find Plaintiff's claims to be legally or factually complex. While most of those claims concern Plaintiff's medical care, they relate largely to issues of delay, rather than complicated medical issues. Accordingly, the Court DENIES Plaintiff's Motion to Request Counsel (#5).

Merit Review

Pursuant to 28 U.S.C. § 1915A, the court must "screen" Plaintiff's complaint and, through such process, identify and dismiss any legally insufficient claim or the entire action if warranted. A claim is defective if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Plaintiff's general allegations of inadequate medical treatment suffered by all IDOC inmates due to a policy of understaffing are insufficient to state a claim. To state a Section 1983 claim, a plaintiff must allege that a defendant harmed them by infringing specific constitutional rights. See *Welton v. Anderson*, 770 F.3d 670, 673 (7th Cir. 2014). "Section 1983 is a tort statute," which means Plaintiff must allege that he has suffered "cognizable legal harm." *Doe v. Welborn*, 110 F.3d 520, 523 (7th Cir. 1997). Relatedly, to state a claim for liability under *Monell*, a plaintiff must, *inter alia*, plausibly allege that a policy or custom *caused* his constitutional rights to be violated. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). But "[w]ithout a harm, there is no causal link between an injury and . . . a policy[.]" *Fanady v. Dart*, 2025 WL 2764509, at *8 (N.D. Ill. Sept. 26, 2025) (finding that "[g]enerally alleging inadequate medical care" is insufficient).

The court thus turns to Plaintiff's specific allegations of harm he has suffered. Plaintiff alleges that he put in a sick call requesting

to be seen by a specialist regarding his heart condition and a sick call regarding potential prostate-related pain. Both requests, Plaintiff alleges, went unanswered.

In both of these instances, Plaintiff has failed to identify an individual responsible for deprivation of his constitutional rights. “To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.” *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

To the extent Plaintiff may intend to pursue these claims under a *Monell* theory, he never explicitly asserts that the delay in his care was connected to his general allegations of understaffing made earlier in his Complaint. “*Monell* complaints are typically dismissed where plaintiffs have failed to tie the alleged policy to their particular injury or have failed to provide any facts beyond a bare assertion that the policy exists.” *Sanchez v. Wexford Health Sources, Inc.*, 2026 WL 691871, at *7 (N.D. Ill. Mar. 12, 2026) (cleaned up); see also *Arita v. Wexford Health Sources, Inc.*, 2016 WL 6432578, at *3 (N.D. Ill. Oct. 31, 2016) (dismissing the plaintiff's

"factually unsupported, boilerplate allegation" regarding a general policy of ignoring inmates' requests for medical attention). Furthermore, Plaintiff makes clear later in his Complaint the precise parameters of his issue with the staffing at the prison: He would like more doctors and specialists to be on staff. There is no plausible inference to be drawn from Plaintiff's allegations that the lack of such medical professionals was the cause of his not getting a response to his sick call requests. See *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019) ("Causation under *Monell* requires a 'direct causal link' between the [policy] and the constitutional injury.").

Plaintiff next alleges that nurse practitioners Shinn and Kramer have persisted in providing him Gabapentin delivered via crush and float method despite knowing that the medication, taken in this manner, is "useless." These allegations "straddle the line between demanding care versus receiving allegedly inadequate or inappropriate care." *Lyons v. Crain*, 2026 WL 1045499, at *7 (S.D. Ill. Apr. 17, 2026). Still, the Court at this preliminary juncture must accept Plaintiff's allegations as true. Allegations that Defendants

Shinn and Kramer declined to adjust Plaintiff's chronic pain treatment—whether by switching him to a new medication or by terminating the crush and float delivery—despite knowing that the present treatment was doing nothing for his chronic pain, are sufficient to state a claim for deliberate indifferent to serious medical needs. See *Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011).

To the extent that Plaintiff seeks to hold Hughes or Baker responsible, on a policy level, for the administration of his medication via crush and float method, the Court notes that the Eleventh Amendment bars Plaintiff from suing these Defendants for damages. *Trujillo v. Hughes*, 2025 WL 1724484, at *2 (S.D. Ill. June 20, 2025) (citing *Gerlach v. Rokita*, 95 F. 4th 493, 498-99 (7th Cir. 2024)). While injunctive relief against these Defendants would be available, Plaintiff does not seek any injunctive relief relating to his Gabapentin.

Finally, Plaintiff seeks to hold maintenance supervisor Kunutea and correctional officers Scandlin, Kane, and Johnson for his slip on spilled water. The Court notes that none of these

individuals are named as Defendants in the caption of Plaintiff's Complaint or in the list of Defendants provided within the Complaint. More importantly, A plaintiff "may join Defendants in the same action only if the claims against each one 'aris[e] out of the same transaction, occurrence, or series of transactions or occurrences[.]" *Mitchell v. Kallas,* 895 F.3d 492, 502-03 (7th Cir. 2018) (quoting Fed. R. Civ. P. 20(a)(2)). "[U]nrelated claims against different defendants belong in separate lawsuits[.]" *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011). "Rule 21 grants district courts broad discretion to sever or dismiss claims and parties that are improperly joined in the same action." *Davenport v. Baker*, 2024 WL 3088529 (S.D. Ill. June 21, 2024).

Plaintiff's claims against Kunutea, Scandlin, Kane, and Johnson are wholly unrelated to those against Shinn, Howard, or any other medical Defendant. Those claims against those parties are therefore improperly joined here and should be brought in a separate lawsuit. As the incident in question took place in August of 2025, dismissal for misjoinder will have no statute of limitations ramifications. Accordingly, Plaintiff's claims against Kunutea,

Scandlin, Kane, and Johnson will be dismissed.

**IT IS THEREFORE ORDERED:**

1. Plaintiff's Motion to Request Counsel (#5) is DENIED.

2. Pursuant to its review, the Court finds that Plaintiff's Complaint states a claim against Defendants Shinn and Kramer for deliberate indifference to serious medical needs in violation of the Eighth Amendment. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

3. The Clerk is directed to DISMISS all other defendants from this case.

4. The Clerk is directed to effect service of process on Defendants Shinn and Kramer pursuant to the Court's standard procedures.

5. This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendant before filing any motions in order to give Defendant notice and an opportunity to respond to those motions. Motions filed before

Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

6. The Court will attempt service on Defendant by mailing waivers of service to him. Defendant has sixty (60) days from the date the waiver is sent to file an answer. If Defendant has not filed an answer or appeared through counsel within ninety (90) days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the Court will enter an Order setting discovery and dispositive motion deadlines.

7. With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8. Defendant shall file an answer within sixty (60) days of

the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this opinion. In general, an answer sets forth Defendant's positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendant. Therefore, no response to the answer is necessary or will be considered.

9. This District uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to defense counsel copies of motions and other papers that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendant's counsel. Discovery requests or responses sent to the Clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel. Discovery does

not begin until defense counsel has filed an appearance and the Court has entered a Scheduling Order, which will explain the discovery process in more detail.

10. Counsel for Defendant is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendant shall arrange the time for the deposition.

11. Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

12. If Defendant fails to sign and return a waiver of service to the Clerk within thirty (30) days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshal Service on Defendant and will require Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

13. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

ENTERED August 17, 2026.

s/ *Sue E. Myerscough*

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**